[No. B086140. Second Dist., Div. Seven. Aug. 28, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED GILBERT FLORES, Defendant and Appellant.

## COUNSEL

Geoffrey R. Pope for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Susan D. Martynec and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—A jury found appellant, Alfred Gilbert Flores, guilty of committing perjury in an application for a duplicate driver's license. (Pen. Code, § 118.) He appeals from his conviction claiming the trial court erred in refusing an instruction which would have prevented the jury from finding him guilty unless they also found the application containing the false statements was an application for an original driver's license. Appellant also contends there was no legally competent evidence to support his conviction because the application he signed under penalty of perjury which formed the basis of his conviction lacked both the place and date of execution. We affirm.

### FACTS AND PROCEEDINGS BELOW

Appellant first obtained a driver's license in the name of Gilbert Flores in 1966 or 1967. He renewed this license several times. He then obtained a driver's license in the name of Albert Gilbert Flores in 1973 and also renewed it several times. Appellant used these licenses interchangeably throughout the years.

On June 10, 1988, the Department of Motor Vehicles (DMV) issued driver's license No. N4174022 to appellant in the name Albert Gilbert Flores. On February 5, 1991, the DMV issued an order revoking this driver's license after appellant sustained three convictions for driving-under-the-influence. (Veh. Code, § 23152.) On February 7, 1991, appellant signed a verbal notice of action, a form which certified a DMV employee had verbally informed appellant, in person, that his license had been revoked. Appellant was instructed to turn over his suspended license and he complied.

In July 1991, appellant decided to reactivate license No. R0935339 in the name of Gilbert Flores originally issued in 1966 or 1967. Appellant appeared at the DMV office in Covina where he completed an application for a duplicate driver's license.

On the renewal application form appellant checked the box indicating he had never had his driver's license suspended or revoked. He also checked the

box indicating he had not applied for a driver's license under a different name within the previous seven years. Appellant signed, but did not date, the application in the designated location below the language reciting information given in the application was subject to penalty of perjury. On July 17, 1991, the DMV issued appellant a duplicate of driver's license No. R0935339 in the name of Gilbert Flores.

On June 7, 1993, the DMV issued an order suspending license No. R0935339 after appellant suffered two additional driving-under-the-influence convictions (Veh. Code, § 23152) while using the recently issued duplicate license in the name of Gilbert Flores.

Thereafter, appellant was charged with perjury in an application for a driver's license (count I) and perjury in an application for an identification card (count II). (Pen. Code, § 118.) A jury found him guilty of count I and acquitted him of the charge in count II. The trial court sentenced appellant to state prison for the midterm of three years and imposed a restitution fine of $500. This appeal followed.

## DISCUSSION

I.  *The Trial Court Properly Refused to Instruct the Jury Pursuant to the Amended Language of Vehicle Code Section 12802.*

Appellant executed the driver's license application at issue in this case in July 1991. At the time, Vehicle Code section 12802 specified every application filed with the DMV had to be signed and verified under penalty of perjury.[1] The Legislature amended section 12802 effective August 2, 1993. The amendment inserted the word "original" and changed the statute to provide every original application filed with the DMV had to be signed and verified under penalty of perjury.

At trial appellant argued the amended version of section 12802 should apply retroactively because it constituted a change in the law which directly benefited his case involving a prosecution for perjury in an application for a duplicate, and not an original, driver's license. (*In re Estrada* (1965) 63 Cal.2d 740, 748 [48 Cal.Rptr. 172, 408 P.2d 948]; *People* v. *Rossi* (1976) 18 Cal.3d 295, 304 [134 Cal.Rptr. 64, 555 P.2d 1313].) Appellant argued the insertion of the term "original" in section 12802 added a substantive element to the offense with which he was charged. (*People* v. *Figueroa* (1993) 20 Cal.App.4th 65, 68 [24 Cal.Rptr.2d 368].) Based on this argument he claimed he could only be convicted of perjury in a DMV application if the

---

[1]All further statutory references are to the Vehicle Code unless otherwise indicated.

jury found he supplied false information in an application for an original driver's license rather than for a duplicate license.

At trial, appellant requested the court to modify its instruction on perjury to reflect the change made in section 12802. The court declined to modify its instruction.

■ On appeal appellant contends it was reversible error to refuse his proffered instruction directing the jury they had to find the application he signed containing the false information was for an original license rather than for a duplicate license.

We agree with appellant a trial court has a duty to instruct the jury on every element of an offense with which a defendant is charged. (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *People* v. *St. Martin* (1970) 1 Cal.3d 524 [83 Cal.Rptr. 166, 463 P.2d 390].) However, we conclude the Legislature did not intend addition of the word "original" in section 12802 to mean only applications for original driver's licenses could be signed under penalty of perjury and therefore perjury in any other applications filed with the DMV was condoned and could not be prosecuted. Accordingly, we hold the word "original" did not become an element of the offense of perjury in a DMV application and the trial court did not err in refusing appellant's instruction.

Section 12802 provides the statutory authority for requiring an application for a driver's license filed with the DMV be signed under penalty of perjury. Section 12802, in effect on July 17, 1991, the date of the charged offense, provided in pertinent part: "*Every* application shall be signed and verified by the applicant before a person authorized to administer oaths . . . ." (Italics added.) The statute requires verification in order to "hold the applicant responsible for any false statements made in the application subjecting him to prosecution for perjury." (*People* v. *Barrowclough* (1974) 39 Cal.App.3d 50, 54 [113 Cal.Rptr. 852].)

In 1993, the Legislature amended section 12802, effective August 2, 1993. (Stats. 1993, ch. 272, § 22.) Amended section 12802 now provides: "*Every original* application shall be signed and verified by the applicant before a person authorized to administer oaths . . . ." (Italics added.)

On appeal, appellant renews his argument the amendatory language of section 12802 should apply retroactively to his case. He points out when a statute is amended, and the change mitigates punishment, absent a savings

clause, the statute will operate retroactively, allowing for the more lenient punishment to be imposed. (*People* v. *Estrada, supra,* 63 Cal.2d at p. 748.) The same reasoning has been applied to statutory revisions which redefine, add new elements to a crime or decriminalize acts altogether, to the benefit of a defendant. (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 301 [279 Cal.Rptr. 592, 807 P.2d 434]; *People* v. *Figueroa, supra,* 20 Cal.App.4th at p. 70; *People* v. *Rossi, supra,* 18 Cal.3d at p. 304.)

Based on this reasoning appellant asserts amended section 12802 added "original" as an essential element to the offense of perjury in a DMV application. Appellant argues because his application was for a renewal and not an application for an original license, he did not have to attest to the truthfulness of the information in the application and therefore cannot be subject to the penalties of perjury.

It is arguable whether the amendatory language should apply retroactively in this case given its unique factual circumstances. However, even if retroactive application would be appropriate, appellant's act would nevertheless constitute perjury.

The crime of perjury in Penal Code section 118 remained unchanged by the amendment of section 12802.[2] In addition, the term "original" in section 12802 does not preclude prosecution for perjury in documents other than an original application for a driver's license. The plain language of the amended statute only states a mandatory requirement that at least a person's initial application shall be signed under penalty of perjury. Nothing in the amended statute says *only* original applications for driver's licenses may be signed under penalty of perjury. Thus, it is irrelevant, in terms of perjury prosecutions, whether one signs a duplicate application, renewal application, photocopy of an application or any other DMV document under penalty of perjury. If the form provides for signing under penalty of perjury, one is expected to supply truthful information regardless of the type or nature of the document filed with the DMV.

Appellant signed the renewal application containing false information under penalty of perjury. Consequently, his acts subjected him to criminal

[2]Penal Code section 118 provides in pertinent part: "(a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury. . . ."

prosecution and the penalties for providing false material information under oath.

Moreover, appellant's argument regarding the lack of any legal effect for perjury in documents other than applications for original driver's licenses makes no sense in light of the legislative history and purpose of the amendment. The Legislature's intent in amending section 12802 was apparently to modernize and computerize the process for license renewals. In a report prepared for the Senate Transportation Committee on Assembly Bill No. 301, the purpose of the proposed amendment to section 12802 was explained as follows: "Section 22: Requires only original driver's license applications to be signed by the applicant, rather than all applications, in order to facilitate renewals by phone or off-site computer." (Sen. Transportation Com., rep. on Assem. Bill No. 301 (1993-1994 Reg. Sess.) § 22, June 15, 1993.) Thus, the purpose of the amendment was apparently an attempt to streamline the application procedure and reduce the need to make a physical appearance at a DMV office in order to renew a driver's license. On the other hand, there is nothing in the history of the amendment to indicate the Legislature intended the amendment to apply to, or have any effect on the crime of perjury as defined in Penal Code section 118. If an applicant chooses to seek renewal of his driver's license by personally appearing and signing the renewal application under penalty of perjury he is guilty of perjury should he lie on that application even if he *could* have elected to file his application in another way which did not require him to sign under penalty of perjury.

In sum, there is nothing to indicate the intent of the amendment to section 12802 was to exonerate persons who supply false information to the DMV under penalty of perjury in documents other than applications for original driver's licenses. Accordingly, we conclude the trial court properly refused to instruct the jury appellant could not be found guilty if they found he supplied false information in an application for a duplicate license.

II. *Substantial Evidence Supports the Perjury Conviction.*

■ Appellant contends there was insufficient evidence to support the perjury conviction based on the driver's license application because the formal requirements for a sworn document, as set forth in Code of Civil Procedure section 2015.5 were not satisfied. Specifically, appellant asserts a declaration under penalty of perjury must both be dated and its place of execution stated to qualify as a sworn document and this was not done in this case.

Section 2015.5 was added to the Code of Civil Procedure effective September 11, 1957. (Stats. 1957, ch. 1612, § 1, p. 2959.) The purpose of

Code of Civil Procedure section 2015.5 is to streamline the oath or affirmation procedure in order to hold one legally responsible for information given in an official document. (Sen. Judiciary Com., Rep. (1957), 1 Appen. to Sen. J. (1957 Reg. Sess.) pp. 175-176.) The statute eliminates many of the technicalities and formalities which made prosecutions for perjury difficult. (See *Selected 1957 Code Legislation* (1957) 32 State Bar J. 501, 567-568; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 413, 416, pp. 459-460, 461-462; 7 Grossman & Van Alstyne, Cal. Practice (2d ed. 1981) Pleading, §§ 702, 705, pp. 205-207, 211-214; 6 Witkin, Cal. Procedure, *supra*, Provisional Remedies, § 3, pp. 16-17; 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Governmental Authority, § 1171, pp. 1350-1351.)

Code of Civil Procedure section 2015.5 provides in pertinent part: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established, or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under the penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), *if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California. . . .*" (Italics added.)

Appellant failed to indicate the date or place of execution when he completed the driver's license application form. Appellant contends the lack of such information is crucial because without the date and place of execution the DMV application does not constitute legally competent evidence under Code of Civil Procedure section 2015.5, and therefore the application is inadequate evidence to sustain his conviction.

The lack of a stated place of execution is not a fatal defect in this case. The driver's license application form expressly stated, "I hereby certify under penalty of perjury *under the laws of the state of California . . . .*" (Italics added.) Appellant's signature then appears in the designated location. Thus, the instrument itself sufficiently recites the place of execution to satisfy Code of Civil Procedure section 2015.5.

Other courts have reached the same conclusion on similar facts. For example, in *McCauley* v. *Superior Court* (1961) 190 Cal.App.2d 562, 564

[12 Cal.Rptr. 119], the respondent challenged the validity of a declaration which failed to state the place of execution. The court noted the instrument itself recited as a caption " 'In the Justice Court of the Upland Judicial District County of San Bernardino, State of California.' " (*Ibid.*) The court concluded there was sufficient compliance with Code of Civil Procedure, section 2015.5 reasoning ". . . this statement is prima facie evidence of the place where the declaration was made." (190 Cal.App.2d at p. 565.)

Appellant also argues the lack of a date on the application form makes the instrument defective, as not in compliance with Code of Civil Procedure section 2015.5. In determining the weight and significance of missing information in similar affidavits, courts have considered various factors.

Some decisions suggest such defects, while curable, can in some contexts be fatal to the legal effectiveness of the document. For example, in *People* v. *United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895, 896 [50 Cal.Rptr. 198], the bonding company moved to vacate a bond forfeiture, supporting its motion with two declarations. Neither declaration stated a date or place of execution. The court observed, in a footnote, such declarations could be deemed insufficient. However, no objection had been raised at trial and the appellate court found "it could easily have been cured" had the point been made. (*Ibid.*)

Similarly, in *People* v. *United Bonding Ins. Co.* (1969) 272 Cal.App.2d 441, 446 [77 Cal.Rptr. 310], the bonding company submitted six motions to set aside the forfeiture of bail posted in a criminal action. Each of the six motions committed the same procedural error, the lack of a stated date and place of execution. The court noted, "[w]hile a one-time omission might be overlooked as inadvertent," such persistent defects raised doubt whether the declarants could be held for perjury. (*Ibid.*) The court concluded "repetitive errors cannot be characterized nor condoned as excusable neglect." (*Ibid.*)

Finally, in *Dodge* v. *Free* (1973) 32 Cal.App.3d 436 [108 Cal.Rptr. 311], a number of citizens circulated petitions for the recall of the district attorney. The district attorney contested the validity of the petitions on the ground they were legally insufficient because a number of them were neither subscribed or dated. The court found the requirement a petition be dated and signed served the purpose of verifying the authenticity of the signatures and identity of the persons signing the petitions. (*Id.* at pp. 441-442.) Thus, because the petitions did not satisfy the verification requirements of the Election Code, the petitions were insufficient to require a recall election. (*Id.* at p. 446.)

In other cases dealing with the subject, courts have held procedural or technical errors to be harmless. For example, in *Hirschman* v. *Saxon* (1966)

246 Cal.App.2d 589, 593 [54 Cal.Rptr. 767], the appellant argued declarations submitted by respondent and his attorney were technically and formally insufficient. The trial court found the declaration filed by respondent personally was properly dated and the instrument sufficiently recited the place of execution to satisfy the requirement of Code of Civil Procedure section 2015.5. (246 Cal.App.2d at p. 593, citing *McCauley* v. *Superior Court, supra,* 190 Cal.App.2d 562, 564.) However, the declaration filed by respondent's attorney was not dated, "but since facts stated therein are cumulative of those set forth in respondent's personal declaration," the court found it unnecessary to decide the effect of the technical defect.

In *Hicks* v. *Hicks* (1968) 264 Cal.App.2d 890, 893 [70 Cal.Rptr. 878], the appellant appealed from an order denying a motion to stay the execution of a judgment. The respondent had filed a notice of motion which was properly dated and signed. He also filed a declaration which was not dated and had only his name typed at the bottom rather than a signature. Despite the missing information, the court upheld the judgment. The court reasoned, "[w]e are doubtful if the failure to have the declaration subscribed can be overlooked, but it is . . . attached to the 'motion,' which is subscribed and dated, and it is. not a very great strain of interpretation to accept the declaration as being subscribed." (*Ibid.*)

Additionally, in *Bank of Venice* v. *Hutchinson* (1912) 19 Cal.App. 219, 221-222 [125 P. 252], the appellant contested the validity of an affidavit for publication of a summons which recited an incorrect date. (*Id.* at p. 221) The court reasoned an affidavit with an incorrect date or lacking a date altogether could still be valid because the date could be deduced. "We are of the opinion that had the jurat omitted any date, and nothing to the contrary appeared, it would be presumed that it was made at the time of its presentation." (*Id.* at p. 222.)

Here appellant failed to properly date his application in the designated location. However, this defect is harmless in light of all the circumstances of the case. At trial appellant testified he signed the renewal application on the same day he completed the application and turned it over to a DMV employee. Evidence at trial established the license which resulted from this application was issued on July 17, 1991. A DMV employee testified that according to DMV procedure, a license is issued within a few weeks of submitting an application. The jury could reasonably infer from this evidence appellant applied for the duplicate license a few weeks prior to July 17, 1991. Consequently, appellant's failure to personally note the date on the application does not constitute a fatal defect in this case.

Here appellant signed the application containing false information under penalty of perjury. The form recited the place of execution, and there is

substantial evidence from which to infer or deduce the date the application was executed. Thus, the requirements of Code of Civil Procedure section 2015.5 have been substantially complied with in this case. Accordingly, we conclude substantial evidence supports appellant's conviction for perjury in a DMV application. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

## DISPOSITION

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied September 21, 1995, and appellant's petition for review by the Supreme Court was denied November 15, 1995.